IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JULIA L. JAMES,                          )
                                         )
           Plaintiff,                    )
                                         )    No.    04 C 2744
    v.                                   )
                                         )    Judge Robert W. Gettleman
HEARTLAND HEALTH SERVICES,               )
JOMARIE SILVER, ROGER DOBSON,            )
LESLIE OHMS, PAUL A. ORMOND              )
and DWAYNE HAMER,                        )
                                         )
           Defendants.                   )

## MEMORANDUM OPINION AND ORDER

Plaintiff, Julia James, a 53 year-old woman, was employed by Heartland Health Services ("Heartland") as a certified nursing aid from April 2000 until her termination on February 27, 2003. On September 1, 2004, plaintiff filed a five-count pro se amended complaint alleging age discrimination (Count I) and retaliatory discharge (Count III) in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 et seq., as well as state law claims of breach of an implied covenant of good faith and fair dealing (Count II), intentional infliction of emotional distress (Count IV), and breach of an employment contract (Count V). Plaintiff seeks declaratory judgment, injunctive relief, and damages.

Plaintiff filed charges with the Equal Employment Opportunity Commission ("EEOC") against Manor Health Care Services on July 30, 2003, alleging age discrimination from October 10, 2002, through February 27, 2003. The EEOC issued a right to sue letter on January 15, 2004, and plaintiff timely filed her complaint on April 15, 2004.

Heartland has filed a motion on behalf of itself and the individual defendants to dismiss plaintiff's complaint with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).[1] For the reasons discussed herein, defendants' motion to dismiss is granted in part and denied in part as to Heartland, and defendants' motion to dismiss is granted as to the individual defendants.

## FACTS[2]

Plaintiff was hired by Heartland in April 2000 as a certified nursing aid, and initially worked at the Rosewood site. Plaintiff concedes that she was an employee at will at all times. JoMarie Silver ("Silver"), Roger Dobson ("Dobson"), Leslie Ohms ("Ohms"), and Paul A. Ormond ("Ormond")are employees of Heartland, and Dwayne Hamer ("Hamer") is a former employee of Heartland. In October 2000 plaintiff complained that a younger employee was violating Heartland's policies. According to plaintiff, after complaining she was harassed by various managers, including Silver and Dobson. On December 17, 2002, plaintiff was suspended for three days without pay. Plaintiff also alleges that she was "forced" to work on December 24 and 25, 2002, while younger employees were not required to work these days. On January 15, 2003, plaintiff was questioned regarding a doctor's statement that she had submitted to Heartland.

In January through April 2003 plaintiff sent four letters to Ohms, who works at Heartland's corporate offices in Toledo, Ohio. On February 13, 2003, the insurance company

---

[1]The court notes that although Hamer is named as a defendant in plaintiff's original and amended complaints, it appears that Hamer has not been served. Defendants ask the court to dismiss the claims against Hamer as well.

[2]For purposes of a motion to dismiss, the court accepts the factual allegations of the complaint as true and draws all reasonable inferences in favor of the plaintiff. See Travel All Over the World v. Kingdom of Saudi Arabia, 73 F.3d 1423, 1428 (7th Cir. 1996).

notified plaintiff that she was going to be dropped from the company's insurance program. Plaintiff was verbally discharged on February 27, 2003, by Dobson, Silver, and Hamer.

## DISCUSSION

The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits. Gibson v. Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990). Federal notice pleading requires only that the plaintiff "set out in her complaint a short and plain statement of the claim that will provide the defendant with fair notice of the claim." Scott v. City of Chicago, 195 F.3d 950, 951 (7th Cir. 1999). When ruling on a motion to dismiss, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Szumny v. Am. Gen. Fin., Inc., 246 F.3d 1065, 1067 (7th Cir. 2001). This rule has particular force when considering the allegations of a pro se complaint, which are held "to less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). Accordingly, pro se complaints are to be liberally construed. McCormick v. City of Chicago, 230 F.3d 319, 325 (7th Cir. 2000).

I. **Age discrimination (Count I)**[3]

Count I of plaintiff's amended complaint alleges that Heartland, Dobson, and Hamer terminated plaintiff in violation of the ADEA.[4] Defendants have moved to dismiss Count I

---

[3] Although plaintiff titles Count I "violation of 42 U.S.C. Section 2000e, et seq," the parties agree that Count I is an ADEA - not a Title VII - claim. The court considers it as such.

[4] The court notes that the EEOC complaint names only Manor Health Care Services as the respondent. Neither Heartland nor any of the individual defendants named in plaintiff's amended complaint are named in her EEOC complaint. Generally, a party not named in an EEOC charge may not be sued. Hewitt v. Metropolitan Water Reclamation Dist., 2002 WL 31176252, at *5 (N.D. Ill. Sep. 30, 2002)(party not named in EEOC charge may not be sued under ADEA). A limited exception to the general rule has been recognized where the unnamed party received

3

against Dobson and Hamer because the ADEA does not provide for individual liability

Defendants have also moved to dismiss Count I against Heartland, arguing that plaintiff fails to state a claim of age discrimination.

Although the Seventh Circuit has not directly addressed the issue of individual liability under the ADEA, it has repeatedly suggested in dicta that the ADEA does not provide for individual liability. See Horwitz v. Bd. of Educ. of Avoca School Dist., 260 F.3d 602, 610 n.10 (7th Cir. 2001); Mathews v. Rollins Hudig Hall Co., 72 F.3d 50, 52 n.2 (7th Cir. 1995); Thelen v. Marc's Big Boy Corp., 64 F.3d 264, 267 n.2 (7th Cir. 1995). The Seventh Circuit has held that there is no individual liability under Title VII or the Americans with Disabilities Act ("ADA"), and the rulings also support the conclusion that there is similarly no individual liability under the ADEA. See Williams v. Banning, 72 F.3d 552 (7th Cir. 1995)(holding that a supervisor in his individual capacity does not fall within Title VII's definition of "employer"); EEOC v. AIC Security Investigations, 55 F.3d 1276 (7th Cir. 1995)(holding that individuals who do not independently meet the definition of "employer" cannot be held liable under the ADA). The Williams court noted that Title VII, the ADA, and the ADEA use virtually the same definition of "employer," and that "courts routinely apply arguments regarding individual liability to all three statutes interchangeably." 72 F.3d at 553-54. In addition, courts of this district have repeatedly held that the ADEA does not provide for individual liability. See e.g., Dent v. City of Chicago, 2003 WL 21801163, at *1 (N.D. Ill. Aug. 1, 2003); Cady v. Miss. Paige, Ltd., 2003 WL

---

adequate notice of the EEOC charge and an opportunity to participate in the conciliation proceedings. Id. Because defendants do not raise the issue, the court will assume for the purposes of the instant motion that plaintiff's claims are not barred by her failure to name defendants in her EEOC charge.

4

1809468, at *2 (N.D. Ill. Aug. 3, 2003); Willett v. Dept. of Children and Family Services, 1998 WL 867406, at *2 (N.D. Ill. Dec. 3, 1998).

Because the ADEA does not support individual liability, defendants' motion to dismiss Count I against the individual defendants is granted with prejudice.

The court now considers whether Count I states a claim against Heartland. The ADEA makes it unlawful "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). Count I of plaintiff's amended complaint alleges that "the illegal termination of plaintiff's employment by defendants...constitutes an unlawful discriminatory employment practice in violation of the [ADEA]." Plaintiff alleges in her amended complaint that she is 53 years old, and thus within the class protected by the ADEA, that she was harassed by supervisors after complaining about a younger employee, and that she was forced to work during the holidays while younger employee were not.

Defendants assert that plaintiff's complaint fails allege that she was meeting her employer's legitimate expectations regarding her work performance, and has "thus failed to sufficiently allege a prima facie cause of action of age discrimination under the ADEA." Defendants ask too much of plaintiff at this stage in the litigation. First, defendants cite to a summary judgment decision, Rand v. CF Industries, Inc., 42 F.3d 1139 (7th Cir. 1994), for the elements of a prima facie case, which are not required to survive a Rule 12(b)(6) motion. Second, not only must plaintiff's pro se amended complaint be liberally construed, see McCormick, 230 F.3d at 325, all plaintiff's complaint need allege is that she was discriminated against based on her age. See Bennett v. Schmidt, 153 F.3d 516, 518 (7th Cir. 1998). The

Seventh Circuit held in Bennett that a plaintiff need only say "I was turned down for a job because of my race," because "racial discrimination is 'a claim upon which relief can be granted.'" Id. The same is perforce true of age discrimination. Byrd v. McGrew, 2001 WL 800083, at *2 (N.D. Ill. 2001)(denying defendant's Rule 12(b)(6) motion to dismiss).

Whether plaintiff may ultimately be able to prove her age discrimination claim is not the subject of a motion to dismiss, in which the court's only concern is whether plaintiff has given defendants notice of the gravamen of her discrimination complaint. See Scott v. City of Chicago, 195 F.3d 950, 951-52 (7th Cir. 1999); Byrd, 2001 WL 800083, at *2. Plaintiff alleges that she was treated less favorably than younger employers, and terminated because of her age. These allegations state a claim upon which relief may be granted.

For the reasons stated above, defendants' motion to dismiss Count I against Dobson and Hamer is granted, and defendants' motion to dismiss Count I against Heartland is denied.

## II. Breach of implied covenant of good faith and fair dealing (Count II)

Count II of plaintiff's amended complaint alleges that Heartland, Dobson, and Hamer breached a implied covenant of good faith and fair dealing that was inherent in the employment relationship between themselves and plaintiff.

It is well-established in Illinois that a covenant of good faith and fair dealing is an implied term of every contract absent express disavowal. Selcke v. New England Ins. Co., 995 F.2d 688, 689 (7th Cir. 1993). This implied covenant, however, is generally not considered an independent source of duties nor does it support an independent cause of action in Illinois. APS Sports Collectibles, Inc. v. Sports Time, Inc., 299 F.3d 624, 628 (7th Cir. 2002); Beraha v. Baxter Health Care Corp., 956 F.2d 1436, 1443 (7th Cir. 1992); Stern v. Great Western Bank, 959 F. Supp. 478,

488 (N.D. Ill. 1997); Industrial Representatives, Inc. v. CP Clare Corp., 1995 WL 348049, at *3 (N.D. Ill. June 6, 1995); Voyles v. Sandia Mortgage Corp., 196 Ill.2d 288, 295 (2001). Plaintiff cites Harrison v. Sears, Roebuck & Co., 189 Ill. App. 3d 980 (4th Dist. 1989), in which the Illinois Appellate Court noted that such a cause of action might exist. Since Harrison, however, multiple courts, including the Illinois Supreme Court in Voyles, have foreclosed this argument, and clarified that the covenant of good faith and fair dealing does not provide an independent cause of action except in limited circumstances not relevant to the instant case. 196 Ill.2d at 295.

Further, courts applying Illinois law have consistently dismissed claims by a terminated at-will employee against her employer based on an independent cause of action for breach of the covenant of good faith and fair dealing. Mims v. General Security Services Corp., 2004 WL 1368757, at *3 (N.D. Ill. June 16, 2004); Nat'l Material Trading v. Emillian, 1993 WL 22697, at *2 (N.D. Ill. Jan. 29, 1993)(collecting cases). It is undisputed that plaintiff in the instant case was an at-will employee. Accordingly, Count II of plaintiff's amended complaint is dismissed with prejudice.

### III. Retaliatory discharge (Count III)

Count III of plaintiff's amended complaint alleges "retaliatory discharge," but plaintiff does not specify a statutory basis for her retaliation claim. The parties agree in their briefs that plaintiff alleges a violation of § 623(d) of the ADEA, which forbids an employer from retaliating against an employee for reasons stemming from the employer's alleged age discrimination. 29 U.S.C. § 623(d); Goodman v. Haitman Fin. Services, 894 F. Supp. 1166, 1172 (N.D. Ill. 1995).

Defendants have moved to dismiss Count III against all the individual defendants. For the reasons discussed above, the ADEA does not support individual liability, and therefore

defendants' motion to dismiss Count III against the individual defendants is granted with prejudice. Defendants have also moved to dismiss Count III against Heartland for failure to allege any "protected activity" that would allow plaintiff to establish a cause of action for retaliation under the ADEA. To state a claim for retaliation under the ADEA, a plaintiff must demonstrate that she engaged in activity that is protected under the ADEA. 29 U.S.C § 623(d); see also, Franzoni v. Hartmarx Corp., 300 F.3d 767, 772 (7th Cir. 2002). Such statutorily protected activity consists of opposing or complaining about conduct prohibited by the ADEA, and may include informal grievances to supervisors. Id.; Schulz v. Varian Medical Systems, Inc., 315 F. Supp. 2d 923, 936 (N.D. Ill. 2004); see also Trammel v. Simmons First Bank of Searcy, 345 F.3d 611, 615 (8th Cir. 2003).

In early 2003 plaintiff wrote four letters to Ohms at Heartland's corporate offices in Toledo, Ohio, copies of which are attached to plaintiff's amended complaint. Plaintiff alleges that these letters were the basis for her retaliatory discharge. Plaintiff's letters describe, inter alia, the alleged mistreatment and neglect of nursing home patients by plaintiff's co-workers, on-the-job drinking and drug use by other Heartland employees, insults plaintiff received from supervisors who accused her of having "called corporate," and verbal and informal complaints plaintiff lodged with various Heartland employees regarding misconduct by her co-workers. Any exhibits attached to a complaint, as well as documents attached to a motion to dismiss that are referred to in a complaint and central to a plaintiff's claim, are considered as part of the pleadings. See Wright v. Assoc. Ins. Companies, 29 F.3d 1244, 1248 (7th Cir. 1994)(citing Venture Assoc. v. Zenith Data Sys., 987 F.2d 429, 431 (7th Cir. 1993). The court therefore

considers the letters attached to plaintiff's amended complaint.[5]

Plaintiff states in her January 19, 2003, letter that she was "written up" for allegedly failing to assist a co-worker with a patient while other employees, including Shannon Thomas ("Thomas"), who is younger than plaintiff, were not disciplined for other misconduct. Plaintiff claims in her letter that Thomas drank and used drugs at work and ignored patients' requests for assistance, but was never suspended or otherwise disciplined until after plaintiff called Heartland's corporate office to relay her concerns about Thomas. Plaintiff was terminated approximately one month after sending the January 19, 2003, letter.

Plaintiff has alleged that younger employees were treated more favorably than she, and that she was terminated after writing a letter complaining about this disparity. Plaintiff has therefore stated a claim of retaliatory discharge under the ADEA. Accordingly, defendants' motion to dismiss Count III against Heartland is denied. As discussed above, defendants' motion to dismiss Count III against the individual defendants is granted with prejudice.

## IV. Intentional infliction of emotional distress (Count IV)

Count IV of plaintiff's amended complaint alleges that defendants' treatment of plaintiff constituted intentional infliction of emotional distress ("IIED"). Plaintiff does not name any individual defendants in Count IV, and she does not identify any specific actions by Heartland. In her response to defendants' motion to dismiss plaintiff clarifies that she alleges that the conduct alleged in paragraph 15 of her amended complaint constituted IIED.

---

[5]It is logical that only events prior to plaintiff's termination may be arguably "protected activity" for which plaintiff was allegedly retaliated against. Two of the letters - dated March 26, 2003, and April 6, 2003 - were written after plaintiff's termination, and therefore are not considered by the court.

9

Defendants argue that plaintiff fails to state an IIED claim because she does not sufficiently allege extreme and outrageous acts on the part of defendants. To recover on an IIED claim, a plaintiff must have evidence to establish that defendants' "extreme and outrageous" conduct caused her severe emotional distress. Watanabe v. Loyola Univ. of Chicago, 2000 WL 876983, at *6 (N.D. Ill. July 3, 2000); Adams v. Sussman & Hertzberg, Ltd., 292 Ill. App. 3d 30, 37 (1st Dist. 1997). Courts applying Illinois law have found liability "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency...." Harriston v. Chicago Tribune Co., 992 F.2d 697, 702-03 (7th Cir. 1993)(citations omitted); McKay v. Town and Country Cadillac, Inc., 991 F. Supp. 966, 972 (N.D. Ill. 1997). The tort does not extend to threats, insults, indignities, annoyances, petty oppressions or other trivialities. Watanabe, 2000 WL 876983 at *6; Adams, 292 Ill. App. 3d at 37. Likewise, mere allegations of discriminatory conduct do not necessarily rise to the level of IIED. See Harriston, 992 F.2d at 703. The court applies an objective standard in determining whether the alleged conduct is sufficiently extreme and outrageous, inquiring whether "the distress inflicted is so severe that no reasonable man could be expected to endure it." Schroeder v. Lufthansa German Airlines, 875 F.2d 613, 623 (7th Cir. 1989).

Paragraph 15 of plaintiff's amended complaint alleges that: (1) after complaining about a younger employee she was harassed by various managers, including Silver and Dobson; (2) she was removed from the Rosewood site; (3) she was suspended for three days without pay; (4) she was forced to work on December 24 and 25, 2002, when younger employees were not; (5) she was questioned regarding a doctor's note she had provided to Heartland; and (6) she was terminated. Plaintiff argues in her response brief that the allegations contained in paragraph 15,

except for her termination, were "outrageous." These alleged acts, however, amount to little more than annoyances and insults, and thus do not rise to the high standard for stating an IIED claim established by caselaw. For example, in Harriston, the Seventh Circuit concluded that an employee did not state an IIED claim, even though she alleged, inter alia, that she had been forced out of her management position, excluded from office activities, threatened with discipline, and falsely accused of having poor sales. 992 F.2d at 703. Similarly, the court in McKay granted the defendant's motion to dismiss the plaintiff's IIED claim for failure to state a claim where plaintiff alleged acts including verbal abuses and insults, taking away the plaintiff's demonstration vehicle, effectively reducing the plaintiff's pay, searching the plaintiff's telephone records for personal calls, and terminating the plaintiff. 991 F. Supp. at 972.

Even if plaintiff in the instant case had alleged "extreme and outrageous acts," she fails to allege facts that might tend to show that she suffered from extreme emotional distress, which is also a required element of an IIED claim. See Feltmeier v. Feltmeier, 207 Ill. 2d 263, 276-277 (2003).

Accordingly, plaintiff fails to state a claim for IIED and defendants' motion to dismiss Count IV is granted.

## V.     Breach of contract (Count V)

Count V of plaintiff's amended complaint alleges that "the representations made to plaintiff at the time of her hire led plaintiff to believe that she would have a job with [Heartland] so long as her performance was satisfactory." Plaintiff also alleges that Dobson made certain "assurances, promises and representations" to plaintiff that led her to "reasonably believe that there existed a contract of continuous employment between plaintiff and [Heartland] and that

11

plaintiff's employment with [Heartland] was secure and permanent."

Federal Rule of Civil Procedure 12(b) requires that if matters outside the pleadings are included in a 12(b)(6) motion, they must be either expressly rejected, or the motion must be converted into a motion for summary judgment. See Travel All Over the World, 73 F.3d at 1430; Byrd, 2001 WL 800083, at *1. A court may, however, consider as part of the pleadings, any documents attached to a motion to dismiss that are referred to in a complaint and central to the plaintiff's claim. See Wright, 29 F.3d at 1248. Defendants attached to their motion to dismiss a complete copy of the Health Care and Retirement Corporation Handbook ("Handbook"), apparently given to Heartland employees. Although plaintiff did not attach a copy of the Handbook to her amended complaint or reference the Handbook in Count V, Count II of plaintiff's amended complaint (breach of the implied covenant of good faith and fair dealing) repeatedly refers to an "Employee Manual." Count V incorporates the preceding paragraphs of her amended complaint, including Count II. Further, plaintiff argues in her response to defendants' motion to dismiss that certain provisions contained in the Handbook created an employment contract. Because a pro se complaint must be construed liberally and because plaintiff refers to the Handbook in her amended complaint, the court will consider the Handbook. The question then is whether either oral representations made to plaintiff or the Handbook created an employment contract between plaintiff and Heartland.

Under Illinois law, there is a legal presumption that employment without a fixed duration is at will, but that presumption can be rebutted by establishing that the parties contracted otherwise. Duldulao v. Saint Mary of Nazarath Hospital Center, 115 Ill.2d 482, 490 (1987). To establish an oral employment contract, an employee must demonstrate that his employer made

a "clear and definite" promise of employment and received valid consideration in exchange for granting more than an at-will relationship. Taylor v. Canteen Corp., 69 F.3d 773, 782 (7th Cir. 1995); Clark v. Walker, 2004 WL 2967105, at *2 (N.D. Ill. Nov. 30, 2004). Oral employment contracts are viewed with more skepticism than their written counterparts. Tolmie v. United Parcel Serv., Inc., 930 F.2d 579, 581 (7th Cir. 1991).

Plaintiff concedes that she was employed at will, but alleges that "assurances, promises, and representations" made to her by Dobson, a director of nursing, created an employment contract. For an oral contract to exist, the parties must have had a meeting of the minds with respect to the terms of the agreement and must have intended to be bound by the oral agreement. M.T. Bonk Co. v. Milton Bradley Co., 945 F.2d 1404, 1407 (7th Cir. 1991). "[T]he focus under Illinois law is on the conduct of the parties and whether that conduct objectively manifested assent to an agreement." Baker v. Elmwood Distributing, Inc, 940 F.2d 1013, 1017 (7th Cir. 1991). Plaintiff does not make any specific factual allegations regarding the nature of representations or promises by Dobson, but merely asserts that she "believed there was a contract for permanent employment." Further, as discussed below, the Handbook clearly states that only the president of Heartland has the authority to enter into an employment contract, which must be in writing. Although plaintiff names the president of Heartland, Ormond, as a defendant, she makes no factual allegations regarding Ormond, including no allegation that Ormond made any representations to plaintiff or entered into an employment contract with her. Plaintiff thus fails to allege sufficient facts to state a claim for breach of an oral contract.

Alternatively, plaintiff argues that the terms of the Handbook created an enforceable contract. In order to establish that an employee handbook or policy meets the requirements of

contract formation, a plaintiff must allege that: (1) the language of the policy statement contains a promise clear enough that an employee would reasonably believe that an offer has been made; (2) the statement was disseminated to the employee in such a manner that the employee was aware of its contents and reasonably believed it to be an offer; and (3) the employee accepted the offer by commencing or continuing to work after learning of the policy statement. Duldulao, 115 Ill.2d at 490. The interpretation of the language of the employee handbook or policy manual is for the court. Boulay v. Impell Corp., 939 F.2d 480, 482 (7th Cir. 1991).

Plaintiff asserts in her response that she relied on language in the Handbook that "Type C violations result in progressive discipline and normally require four steps for discharge," and that defendants breached the contract created by the Handbook when they terminated plaintiff without following this provision. Plaintiff relies on Wojcik v. Commonwealth Mortgage Corp., 732 F. Supp. 940, 941 (N.D. Ill. 1990), in support of her argument that an employee manual or handbook may give rise to other employee rights, but plaintiff misunderstands the holding of Wojcik. Wojcik involved two separate documents: an employee manual and an employee handbook. The handbook contained a disclaimer that the handbook did not create an employment contract, and the Wojcik court held accordingly that "[i]t is clear from that language that no employee could reasonably believe that any provision of the *handbook* could be relied upon as a promise by either the employer or the employee" Id. (emphasis in original). The language from Wojcik quoted in plaintiff's brief referred to the policy manual, which did not contain a disclaimer, and is therefore inapposite to the instant case.

Defendants argue that the plain and unmistakable language of the Handbook defeats any allegation that it created a contract of employment with plaintiff. The Handbook states:

14

> Your employment with HCR is "at-will" and nothing in this handbook is intended or should be interpreted by you or any employee to promise, offer, or grant lifetime employment, employment for a definite term or employment security. No Officer, Manager, Administrator, Supervisor, employee or agent of HCR, except the President of HCR, has authority to enter into any agreement for employment. If a contract of employment is agreed to by the President of HCR, the agreement must be in writing and signed by both the employee and the President.

Such unambiguous disclaimers have been held to prevent the formation of a contract. Boulay, 939 F.2d at 483; Robbins v. Bankers Life & Casualty, Inc., 1996 WL 341546, at *19 (N.D. Ill. June 20, 1996); Birks v. First Evergreen Corp., 1994 WL 36884, at *4 (N.D. Ill. Feb 8, 1994); Wojcik, 732 F. Supp. at 941. By the court's count, the Handbook contains at least four explicit disclaimers that the Handbook does not create an employment contract, and such disclaimers have repeatedly been held to apply to all provisions in the manual or handbook and to negate contract expectations. For example, the "Type C" violation paragraph of the Handbook quoted by plaintiff is part of a section titled "Rules for Your Protection." Also contained in that section, on the same page as the "Type C" provisions, is a paragraph that states, "[s]ince you are an "at-will" employee of HCR, the offering of Rules for Your Protection does not imply an employment contract. HCR does not promise, nor give, any expectations of lifetime employment, employment for a definite term, or employment security." The handbook, therefore, did not create an employment contract with plaintiff.

For the reasons stated above, defendants' motion to dismiss Count V is granted.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss Count I and Count III against the individual defendants is granted with prejudice, and defendants' motion to dismiss Count I and Count III against Heartland is denied. Defendants' motion to dismiss Count II is granted

with prejudice. Defendants' motion to dismiss Count IV and Count V against all defendants is granted. This matter is set for a hearing on status on February 2, 2005, at 9:00 a.m.

**ENTER:** **January 28, 2005**

_____
**Robert W. Gettleman**
**United States District Judge**